IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FREDRICK C. GULUMA, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: DLB-20-3588 |
| LOUIS DEJOY, Postmaster General, U. S. Postal Service, | * | |
| | * | |
| Defendant. | | |

## MEMORANDUM OPINION

Fredrick Guluma, proceeding *pro se*, filed suit against the Postmaster General of the U.S. Postal Service, claiming violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). Guluma, a postal employee, alleges his employer discriminated against him based on his race, national origin, and age when his supervisor placed him on emergency off-duty status and then subjected him to yelling and criticism for a period of two months upon his return. ECF 1. Defendant moves to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. ECF 19. The motion has been fully briefed. ECF 23 & 24. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is granted.

**I.    Background**

As is proper on a motion to dismiss, the Court takes all well-pleaded allegations contained in the complaint as true. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citing *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). Guluma attached several exhibits to his complaint, which the Court considers as part of the complaint "for all purposes." Fed. R. Civ. P. 10(c); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Guluma is an employee of the United States Postal Service. ECF 1, ¶ 4.1. He works as a data technician. *Id.* His employment began on November 17, 2012 and continued through at least December 2020, when he filed the pending complaint. *Id.*

Guluma alleges he suffered workplace discrimination between October and December 2016. *Id.* ¶ 4.3. At the time, Guluma worked as a parcel post distribution clerk at the Capital Beltway Facility. *Id.*; ECF 1-6, at 38. Guluma is Ugandan and was 55 years old at the time of the alleged discrimination. ECF 1-6, at 39. He does not identify his race. On October 14, while Guluma was working the mail racks, Guluma's supervisor, Tamara Johnson, accused him of touching her. ECF 1, ¶¶ 4.3, 4.5. Guluma described the events leading up to the accusation as follows: "As I approached [Johnson], she was busy going through her phone and my right forearm accidentally touched her arm . . . . Out of the blue . . . , she yelled at me saying 'don't touch me.' I had to walk away from this crazy and unfriendly situation and continued with my work." ECF 1-6, at 28 (cleaned up). As a result of Johnson's accusation, Guluma was placed on emergency off-duty status that same day. ECF 1-6, at 26. He did not receive pay during the emergency placement. *Id.*

Guluma's union filed a grievance on his behalf, and Johnson "was ordered to recall [him] back to work." ECF 1, ¶ 4.6. Following Guluma's return to work, Johnson "discriminated against [him] by being spiteful, shouting at [him] and being critical of [his] work." *Id.* ¶ 4.3. Johnson "did not stop her abuses" when Guluma informed her he was "above 40 years" in age. *Id.* ¶ 4.4. Johnson "made it a habit to constantly yell at [him] on the work floor despite the fact that" he was "over 40 years[.]" ECF 1-6, at 44. She did not act the same way to Guluma's "age contemporaries." *Id.* She would yell his name loudly and look "for fault" in him, and she was "critical and spiteful" of his work. *Id.* On December 25, Guluma noticed his colleagues "doing

nothing" and he decided to also relax his hurting foot. *Id.* Johnson approached them and ignored the other employees while yelling at Guluma and threatening him about being "off the clock" when he had just arrived. *Id.* On December 30, Guluma arrived at work and relieved another employee, as was normal practice, but Johnson "came along yelling at [him]" about it and asked him who told him to relieve the employee. *Id.* She also would "come to inspect the mail [he] was sorting and placing in the sacks[.]" *Id.*

After contacting an Equal Employment Opportunity Commission ("EEOC") Counselor, Guluma filed a Formal Complaint of Discrimination ("EEOC complaint") with the Postal Service on February 8, 2017. *Id.* at 28–29. He claimed he was discriminated against when Johnson placed him on emergency leave, when she was critical of his work, and when she spoke to him in a loud manner. ECF 1-7, at 1. He also claimed a hostile work environment. *Id.* at 17. He claimed discrimination based on his national origin and age and retaliation for his EEOC activity. *Id.* at 1. He abandoned his retaliation claims at the administrative level. *Id.* at 11. Sometime after filing his EEOC complaint, Guluma "bid out" of the Capital Beltway Facility. ECF 1, ¶ 4.6.

In his EEOC Investigative Affidavit, Guluma stated he was not sure if his supervisors were aware of his age or national origin, but that they knew he "originated from the African continent because of [his] accent." ECF 1-6, at 39. He added:

> It's my belief that since they knew [I] am an immigrant from Africa and thou[gh] it does not specify my national origin, I became a victim of circumstances that meant they had to take the course of action they did in their own instinct[.]
>
> I don't think this was a factor but I am above 40 years of age and I needed some degree of respect but the way I was treated makes me believe that they intended to humiliate me without any compassion based on my age.
>
> . . .
>
> This was an ongoing scenario as I had become a specific target for her constant harassment and to a certain extent I would believe that it was due to the fact that [I]

> am an immigrant from Africa though my nationality seems m[ea]ningless at this point[.]
>
> . . .
>
> I was always singled out for discriminatory harassment because I believe I was the only remaining African from the African continent.
>
> I was always saying I need respect because [I] am above 40 and always maintained the fact that [Johnson] should treat me just as she does others of my age bracket.

*Id.* at 43, 46, 50.  Guluma identified another employee, approximately age 26, as one of several younger employees whom Johnson did not criticize in the same manner she criticized Guluma.  *Id.* at 46–47.

On July 21, 2017, the Postal Service issued a Final Agency Decision regarding Guluma's EEOC complaint, finding that "the evidence does not support a finding that the complainant was subject to discrimination as alleged" and closing the case "with a finding of no discrimination."  ECF 1-7, at 21–22.  Guluma appealed the decision to the EEOC Office of Federal Operations, which affirmed the decision on October 26, 2018.  ECF 1-5, at 4–11.  Guluma requested reconsideration, which was denied on September 9, 2020.  ECF 1-4.

Guluma filed the pending complaint on December 10, 2020.  ECF 1.  He claims violations of Title VII and the ADEA.  *Id.*  He alleges he was discriminated against based on his race, national origin, and age when he was placed on off-duty status, when Johnson yelled at him, and when she was critical of his work.  *Id.* at ¶¶ 4.3, 4.6.  He asserts the evidence will establish "a pattern of constant discrimination, abuse and unsafe work environment which caused emotional damage to [him] as a person, distress, lack of self esteem and other effects."  *Id.* ¶ 5.

## II.     Standard of Review

Defendant moves to dismiss some of Guluma's Title VII and ADEA claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the grounds that

4

he failed to exhaust his administrative remedies. ECF 19, at 5–7. The Supreme Court recently held Title VII's administrative exhaustion requirement is not a jurisdictional issue. *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019). This Court has applied the holding in *Davis* to the ADEA, which has a similar administrative exhaustion requirement. *See, e.g.*, *Ebaugh v. Mayor & City Council of Baltimore*, No. ELH-20-663, 2021 WL 2580118, at *7 (D. Md. June 23, 2021) (applying *Davis* to ADEA claims); *Johnson v. Silver Diner, Inc.*, No. PWG-18-3021, 2019 WL 3717784, at *2 (D. Md. Aug. 7, 2019) (treating a Rule 12(b)(1) motion to dismiss Title VII and ADEA claims for failure to exhaust administrative remedies as a Rule 12(b)(6) motion). Consequently, any motion to dismiss based on a failure to exhaust administrative remedies should be considered under Rule 12(b)(6), not Rule 12(b)(1). *See Olivarria v. Cooper*, 776 F. App'x 128, 129 (4th Cir. 2019) (mem.) (remanding because the district court found it lacked jurisdiction over an unexhausted Title VII claim and advising the exhaustion requirement is not jurisdictional), *rev'g* No. 5:17-CV-590-D, 2019 WL 1748506 (E.D.N.C. Apr. 18, 2019).

      A Rule 12(b)(6) motion to dismiss for failure to state a claim "tests the legal sufficiency of a complaint" and "should be granted unless the complaint 'states a plausible claim for relief.'" *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)); *see* Fed. R. Civ. P. 12(b)(6). To survive the motion, the "complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray*, 948 F.3d at 226 (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). Stated differently, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012) (quoting *Edwards v. City*

5

*of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). In ruling on a Rule 12(b)(6) motion, the Court must accept all the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *In re Birmingham*, 846 F.3d at 92 (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

The Court is required to liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Courts are not required," however, "to conjure up questions never squarely presented to them." *Deabreu v. Novastar Home Mortg., Inc.*, 536 F. App'x 373, 375 (4th Cir. 2013) (per curiam) (unpublished) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)). "The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate." *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990).

### III. Discussion

Defendant moves to dismiss Guluma's claims on two grounds. First, he argues some of the claims are unexhausted. Second, he argues Guluma fails to allege a *prima facie* case of employment discrimination. The Court addresses each argument in turn.

#### A. Exhaustion

"Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, prohibits employment discrimination." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The Act reaches "status-based discrimination" by providing "basic workplace protection such as prohibitions against employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (citing 42 U.S.C. § 2000e-2(a)). The ADEA provides similar protections against discrimination based on age. *See* 29 U.S.C. § 623(a). The protections of Title VII and the

ADEA extend to persons employed by the Postal Service.  42 U.S.C. § 2000e-16(a); 29 U.S.C. § 633a(a).

Claims brought under Title VII and the ADEA are subject to an administrative exhaustion requirement.  *Davis*, 139 S. Ct. at 1851 (discussing Title VII's exhaustion provisions); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the EEOC."), *abrogated on other grounds by Davis*, 139 S. Ct. 1843; *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 348–49 (D. Md. 2012) (discussing ADEA exhaustion requirement).  This requirement "ensures that the employer is put on notice of the alleged violations, thereby giving it a chance to address the alleged discrimination prior to litigation."  *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (quotation marks and citation omitted).  "An individual cannot bring suit until he has exhausted the administrative process."  *Chacko*, 429 F.3d at 509 (citing 42 U.S.C. § 2000e-5(b), (f)(1)).  Additionally, the "allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) (citing *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976)).  Thus, when a plaintiff's administrative charge alleges discrimination on one basis or one type of discrimination but he introduces another basis or type of discrimination in formal litigation, the new claims "will generally be barred[.]"  *Chacko*, 429 F.3d at 509.

Defendant argues Guluma has not exhausted his race discrimination claims because he did not raise those claims in his EEOC complaint.  The Court agrees.  Guluma did not allege in his EEOC complaint or during the subsequent investigation that he was discriminated against based

7

on his race.  *See* ECF 1-6 (EEOC complaint and investigative documents, none mentioning Guluma's race or alleging racial discrimination); ECF 1-7, at 1 (USPS Final Agency Decision, noting Guluma claimed discrimination on the basis of age, national origin, and retaliation for prior EEOC activity); ECF 1-5, at 4 (EEOC appellate decision, not mentioning racial discrimination). Guluma asserts discrimination based on race for the first time in his pending complaint. Accordingly, he has not exhausted his race discrimination claims.

Defendant continues that Guluma also has failed to exhaust his claims that he was discriminated against when Johnson reported that Guluma pushed her arm. Defendant sees this claim in paragraph 4.5 of Guluma's pending complaint, which states: "That due to constant abuses, it culminated into an incident on the date of October 14, 2016, [w]hen she alleged that I had touched her while in my course of duty/employment." ECF 1, ¶ 4.5. The Court does not interpret this allegation as an attempt to state a claim distinct from Guluma's claims of discrimination for being placed on off-duty status following his October 14 interaction with Johnson. Guluma simply alleges that Johnson accused him of pushing her, and as a result, he was placed on off-duty status. In Guluma's reply, he did not identify Johnson's accusation as a separate claim. *See* ECF 23, at 2–3 (identifying discrimination claims as (a) placement on off-duty status, (b) criticism, (c) speaking in a loud manner, and (d) continuous yelling). Guluma has not previously attempted to state separate claims for the accusation and its consequence, and the Court does not read his complaint as doing so now.

Finally, defendant argues Guluma has not exhausted his claims that Johnson yelled at him and criticized him prior to October 14, 2016. The Court is not certain Guluma intended to make any such claims. His pending complaint, like his EEOC complaint, refers to the events of October 14 and conduct occurring over the following two months. *Compare* ECF 1, *with* ECF 1-6, at 28–

8

29 (EEOC complaint referring to incidents on December 25 and 30). Guluma alleges Johnson's yelling and criticism "went on for a period of two (2) months where she discriminated against [him] by being spiteful, shouting at [him] and being critical of [his] work." ECF 1, ¶ 4.3. Defendant's interpretation apparently arises from Guluma's subsequent allegation that "due to constant abuses, it culminated into an incident on the date of October 14, 2016, [w]hen she alleged that I had touched her while in my course of duty/employment." *Id.* ¶ 4.5. A plain reading of this paragraph in isolation does suggest some abuses preceded October 14, but in the context of Guluma's previous claims and his complaint as a whole, it is likely his use of "culminated" was in error and he did not intend to allege any discrimination beyond the two-month period he alleged in his EEOC complaint. To the extent Guluma claims age or national origin discrimination from incidents occurring before October 14, 2016, such claims were not raised in his EEOC complaint or the subsequent investigation, and he has not exhausted them.

Guluma counters he was not required to exhaust his administrative remedies. ECF 23, at 3. He cites *Drew v. Liberty Mutual Insurance Co.*, 480 F.2d 69 (5th Cir. 1973), and *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981), in support of his argument. Neither case changes the Court's analysis. *Drew* held a plaintiff alleging workplace discrimination and pursuing an EEOC action may seek temporary injunctive relief pending resolution of the administrative proceeding. *Drew*, 480 F.2d at 72–74. Guluma does not seek temporary injunctive relief, and his administrative process has concluded. In *Gupta*, the plaintiff was discharged after he initiated his lawsuit, and he asserted a claim of retaliation without first exhausting that claim. *Gupta*, 654 F.2d at 413. The Court held "it is unnecessary for a plaintiff to exhaust administrative remedies prior to [bringing] a retaliation claim growing out of an earlier charge" because it "is the nature of retaliation claims that they arise after the filing of an EEOC charge." *Id.* at 414. Guluma

was not discharged after he filed suit, and he does not claim retaliation.  These cases do not help Guluma's cause.

Guluma's claims of racial discrimination and any claims based on discriminatory conduct before October 14, 2016 are dismissed as unexhausted.

### B. Failure to State a Claim

#### 1. National Origin and Age Discrimination

To survive a motion to dismiss a Title VII employment discrimination claim, a plaintiff must "allege facts to satisfy the elements of a cause of action created by that statute." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021) (quoting *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).  The same standard applies to claims under the ADEA.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–14 (2002).  The plaintiff may allege direct evidence of employment discrimination or proceed under the *McDonnell Douglas* burden-shifting framework, which begins with a *prima facie* case of employment discrimination.  *Bing*, 959 F.3d at 616 n.8.  While the plaintiff "need not plead a prima facie case of discrimination," the elements of a *prima facie* case inform whether the plaintiff plausibly alleges a Title VII or ADEA violation.  *Id.* at 616 (quoting *Swierkiewicz*, 534 U.S. at 515); *see also Niner v. Garrett Cnty. Pub. Works*, No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2018) (noting "the elements of a prima facie case are a helpful guide in assessing the adequacy of the allegations").  A *prima facie* case of employment discrimination comprises: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances that raise an inference of unlawful discrimination.  *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *Bryant v. Aiken*

*Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 544–45 (4th Cir. 2003); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (ADEA context).

Defendant argues Guluma's ADEA and Title VII claims fail because he has not alleged an adverse employment action. An adverse employment action "is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks and citation omitted). It "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). In most cases, it inflicts direct economic harm. *Ellerth*, 524 U.S. at 762. Loud and harsh criticism do not rise to this level. *See Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (holding yelling and spying on an employee did not constitute adverse employment actions because they did not affect "the terms, conditions, or benefits" of employment); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019) (holding verbal reprimands were not adverse employment actions). Certainly, if Guluma has not alleged an adverse employment action, he has not stated a plausible claim of employment discrimination under Title VII or the ADEA.

Guluma alleges that Johnson yelled his name loudly and was more critical of him than other workers. ECF 1-6, at 44. For a period of two months, Johnson was "spiteful, shouting at [him] and being critical of [his] work." ECF 1, ¶ 4.3. Guluma describes two incidents in detail. On December 25, Johnson yelled at and criticized Guluma for relaxing when other workers were also relaxing. ECF 1-6, at 44. On December 30, Johnson yelled at and criticized him for relieving another employee when it was normal practice to do so. *Id.* These allegations of yelling and

11

criticism do not describe conduct that adversely affected the terms, conditions, or benefits of Guluma's employment and thus do not constitute adverse employment actions. *See Munday*, 126 F.3d at 243; *Fox*, 918 F.3d at 72.

The only other potential adverse employment action Guluma alleges is his placement on off-duty status without pay. ECF 1, ¶ 4.6; ECF 1-6, at 41. Generally, a suspension without pay would qualify as an adverse employment action because it changes the terms, conditions, and benefits of employment and results in direct economic harm to the employee. But within days of Guluma's placement on off-duty status, his union representative filed a grievance on his behalf with the Postal Service. ECF 19-2.[1] As a result of the grievance, Guluma's placement on off-duty status was "rescinded and expunged from all records" and he received a "lump sum payment" of backpay for the period. ECF 19-3 (letter reflecting settlement of Guluma's grievance). At least one other court has concluded under similar circumstances that a plaintiff fails to plead an adverse employment action when a settlement has fully redressed the alleged adverse action such that there were no changes to the terms, conditions, or benefits of employment. *See, e.g.*, *Magyar v. U.S. Postal Serv.*, No. 18-13447, 2019 WL 1989207, at *6–7 (E.D. Mich. May 6, 2019).

In *Magyar*, the plaintiff postal worker had been accused of misconduct by his supervisor, and the Postal Service had placed him on off-duty status (under the same zero-tolerance policy that led the Postal Service to place Guluma on off-duty status). *Id.* at *2–3. The plaintiff initiated

---

[1] Guluma does not contest the authenticity of the documents pertaining to his grievance that defendant attached to the motion to dismiss, ECF 19-2 & 19-3. *See* ECF 23. The Court takes judicial notice of them. Fed. R. Evid. 201(b)(2); *see also Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (noting courts may take judicial notice of facts not subject to reasonable dispute and which can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, so long as the facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint).

a grievance. *Id.* at *3. The Postal Service settled the grievance, restoring the plaintiff's pay for the suspension period and expunging the suspension from his record. *Id.* In resolving the plaintiff's claims arising from his placement on off-duty status, the Court concluded the settlement fully remedied the effects of the plaintiff's suspension, so the suspension was no longer an adverse employment action. *Id.* at *6. The employee received backpay and thus suffered no economic harm, and he had "a clean record" because "the suspension was removed during the grievance process." *Id.* at *6–7.

Like the plaintiff in *Magyar*, Guluma accepted a settlement that ensured there was no lasting change to the terms, conditions, or benefits of his employment. ECF 19-3. He suffered no economic harm, and his responsibilities and opportunities went unchanged. Because Guluma's placement on off-duty status was fully redressed through the grievance process such that he did not lose any pay or promotion opportunity, it does not constitute an adverse employment action. *See Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999) (affirming dismissal of employment discrimination claim for failing to allege an adverse employment action where the plaintiff did not allege "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion"); *Ellis v. Kanawha Cnty. Pub. Libr.*, No. 2:15-CV-05698, 2016 WL 5387648, at *7 n.4 (S.D.W. Va. Sept. 26, 2016) (noting "a suspension that does not produce a material consequence to the employee may not be an adverse employment action") (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *Wilson v. Mabus*, 65 F. Supp. 3d 127, 132–33 (D.D.C. 2014) (concluding plaintiff failed to allege an adverse employment action when his suspension "cause[d] him no economic harm" and did not affect his "employment terms, conditions, privileges or future employment opportunities"); *Callens v. Wash. Metro. Area Transit Auth.*, No. 1:10-CV-842, 2012 WL 149224, at *3 (E.D. Va. Jan. 18, 2012)

(granting summary judgment against employment discrimination claim where the record showed no adverse employment action because "the alleged pay miscalculation was corrected" shortly after it occurred); *Lurie v. Meserve*, 214 F. Supp. 2d 546, 550 (D. Md. 2002) ("Because Defendant took corrective action . . . a violation no longer exists under the ADEA . . . . Therefore, Plaintiff has failed to substantiate his claim of an adverse employment action . . . .").[2]

Because Guluma has not pled an adverse employment action, he has not stated plausible discrimination claims under Title VII and the ADEA. Those claims are dismissed.

### 2. Hostile Work Environment

Guluma also claims a hostile work environment based on his national origin and/or age. ECF 1-1, at 1 (describing cause of action as "unsafe work environment," among other claims). A hostile work environment exists when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment[.]'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). To state a hostile work environment claim, a plaintiff must allege "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected trait]; (3) which is sufficiently severe or

---

[2] Defendant argues in the alternative that Guluma is barred from raising claims relating to his placement on off-duty status because he first challenged that action through a grievance but did not exhaust the grievance process. Federal law prohibits certain employees from pursuing both a union grievance and an EEOC complaint on the same "matter." 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301(a); *Moreno v. McHugh*, No. ELH-10-2511, 2011 WL 2791240, at *9 (D. Md. July 14, 2011) (discussing the rule). However, § 7121(d) and 29 C.F.R. § 1614.301(a) do not apply to Postal Service employees. *See* 5 U.S.C. § 2105(e) ("Except as otherwise provided by law, an employee of the United States Postal Service . . . is deemed not an employee for purposes of this title."); *Troupe v. DeJoy*, 861 F. App'x 291, 293 n.3 (11th Cir. 2021) (noting Postmaster General conceded the district court's decision adopting a similar argument was error); *Maddox v. Runyon*, 139 F.3d 1017, 1021 (5th Cir. 1998) ("As noted by the Federal Circuit, however, section 7121(d) is inapplicable to Postal Service employees." (citations omitted)). Because Guluma is a postal employee, the applicable provision here is 29 C.F.R. § 1614.301(c). *Hickey v. Brennan*, 969 F.3d 1113, 1119 (10th Cir. 2020). This provision does not forbid the pursuit of both a grievance and an EEOC complaint on the same matter. *Id.*

pervasive to alter the plaintiff's conditions of employment and to create an abusive environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)) (internal quotation marks omitted); *see also Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006) (considering hostile work environment claim under ADEA) (citing *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003)).

Defendant does not address Guluma's hostile work environment claims. Nonetheless, the Court concludes Guluma has failed to plausibly allege the third element, that the unwelcome conduct was sufficiently severe or pervasive.[3] This element "has both a subjective and objective component." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 21). When deciding the objective component of a hostile work environment claim, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[C]omplaints premised on nothing more than rude treatment by [coworkers],

---

[3] "Where the face of complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)).

15

callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor . . . are not actionable under Title VII." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (internal quotation marks and citations omitted).

Guluma alleges Johnson was "spiteful, shouting at [him] and being critical of [his] work." ECF 1, ¶ 4.3. As discussed above, he describes two specific incidents, one where Johnson singled him out among a group taking a break, and one where Johnson yelled at him for doing what he claims was routine in his workplace. ECF 1-6, at 44. He also alleges Johnson accused him of pushing her and that her accusation resulted in him being placed on off-duty status. ECF 1, ¶¶ 4.5, 4.6; ECF 1-6, at 28. Finally, he alleges he "bid out" of the facility because of her behavior. ECF 1, ¶ 4.6.[4]

These allegations, accepted as true, do not describe behavior severe or pervasive enough to amount to a change in the terms and conditions of Guluma's employment. Guluma's allegations simply do not rise to the level of severity that the Fourth Circuit and this Court consider actionable. "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. While Guluma alleges Johnson's behavior was constant, the specific examples he identifies are few and not objectively severe. Johnson's alleged conduct on December 25 and 30 may have been unreasonable, but it was not physically threatening

---

[4] Guluma also alleges Johnson's conduct led other employees to petition management for her removal as supervisor. ECF 1-6, at 5. The petition states Johnson "creates a hostile environment for those of us who have to work for her" and charges that "she does not know or understand the processes of the CBF location." *Id.* It is dated August 29, 2017, nearly a year after the conduct of which Guluma complains. *Id.* It contains no specific allegations about Johnson's conduct towards Guluma in particular and does not therefore support his hostile work environment claims. To the contrary, it seems to undermine Guluma's claims by suggesting Johnson's behavior was universal and not limited to Guluma—i.e., that it was not based on Guluma's protected traits.

or humiliating and did not interfere with Guluma's ability to work. Indeed, following the incident on December 30 when Johnson yelled at and criticized Guluma for relieving another employee, Guluma simply went to "relieve another employee on the same machine." ECF 1-6, at 44. Similarly, after the touching incident on October 14, Guluma walked away from the situation and "continued with [his] work." *Id.* at 28.

The Fourth Circuit previously affirmed the dismissal of a hostile work environment claim arising from allegations of a more hostile environment than Guluma alleges here. In *Buchhagen v. ICF International, Inc.*, 545 F. App'x 217 (4th Cir. 2013) (unpublished), the plaintiff alleged that a supervisor mockingly yelled at the plaintiff in one meeting, yelled and pounded her hands on her desk during another meeting, repeatedly harped on a mistake made by the plaintiff, made snide comments to the plaintiff, played favorites with employees and pitted employees against each other, and unfairly scrutinized and criticized the plaintiff's use of leave and compliance with directives. 545 F. App'x at 219. Johnson's alleged conduct is far less hostile than the supervisor's alleged conduct in *Buchhagen*, which the Fourth Circuit found could not survive a motion to dismiss. *Id.*; *see also Vincent v. MedStar S. Md. Hosp. Ctr.*, No. TDC-16-1438, 2017 WL 3668756, at *9–10 (D. Md. Aug. 22, 2017) (citing cases and finding no hostile work environment where plaintiff alleged she resigned after supervisor yelled at her, demeaned her, and harassed her almost daily for several months). Accordingly, Guluma has not plausibly alleged a hostile work environment, and those claims are dismissed.

### C. Scope of Dismissal

Whether to dismiss with prejudice under Rule 12(b)(6) lies within the Court's discretion. *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985). Dismissal with prejudice is warranted where "amendment would be futile in light of the fundamental deficiencies

in plaintiffs' theory of liability." *Cozzarelli v. Inspire Pharms, Inc.* 549 F.3d 618, 630 (4th Cir. 2008).

Guluma's claims of race discrimination and discrimination before October 14, 2016 are unexhausted and dismissed with prejudice because amendment would be futile.

As to Guluma's exhausted age and national origin discrimination claims, he does not allege conduct that qualifies as an adverse employment action under Title VII or the ADEA. No additional or altered allegations can change the fact that Johnson's yelling and criticism are not actionable adverse employment actions, or the fact that Guluma's placement on off-duty status was fully redressed through the grievance process. Because amendment would be futile, these claims are also dismissed with prejudice.

Amendment of Guluma's hostile work environment claims would not necessarily be futile. The unwelcome conduct Guluma alleges is of the sort that could constitute a hostile work environment if sufficiently severe and pervasive, motivated by one or more of Guluma's protected traits, and imputable to the employer. *See Boyer-Liberto*, 786 F.3d at 277. It is possible that more detailed allegations about the incidents of yelling and criticism that occurred between October and December of 2016 could push the claims passed the plausibility threshold to survive a motion to dismiss. The Court will allow Guluma 21 days to amend his hostile work environment claims in light of the discussion in this opinion and other relevant cases. Accordingly, Guluma's hostile work environment claims are dismissed without prejudice. If Guluma does not file an amended complaint by June 14, the Court will dismiss the claims with prejudice and order the case closed.

### IV.    Conclusion

Guluma has not exhausted his claims of race discrimination or discrimination occurring before October 14, 2016. He also does not plausibly allege employment discrimination or a hostile

work environment under Title VII or the ADEA.  Because Guluma has failed to state a claim upon which relief can be granted, his complaint must be dismissed.

DATED this 24th day of May, 2022.

_____
Deborah L. Boardman
United States District Judge