IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FREDRICK C. GULUMA, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-20-3588 |
| LOUIS DEJOY, Postmaster General, U.S. Postal Service, | * | |
| | * | |
| Defendant. | | |

## MEMORANDUM OPINION

Fredrick Guluma, proceeding *pro se*, filed suit against the Postmaster General of the U.S. Postal Service ("USPS"). ECF 1. Guluma, a postal employee, claims his employer created a hostile work environment in violation Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). ECF 27 & 30.[1] In his amended complaint, he alleges his former supervisor yelled at him and was critical of his work over several months. *Id.* The defendant moves to dismiss the amended complaint for failure to state a claim. ECF 33. Guluma has not responded to the arguments in the motion to dismiss. In a letter filed the same day the motion to dismiss was filed, he requests that the Court facilitate a swift resolution of his claims, refuse to grant the defendant any future deadline extensions, and sanction the defendant for past delays. ECF 34. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is granted and Guluma's requests are denied. His amended complaint is dismissed.

---

[1] Guluma filed an amended complaint on June 14, 2022. ECF 27. On June 27, he filed the same document with the addition of page numbers but without the previously attached exhibits. ECF 30. The allegations in both are identical.

I.     **Guluma's Allegations**

Guluma has been an employee of USPS since October 17, 2012. ECF 30, ¶ 4(a). He is of African origin and over 40 years old. *Id.* ¶ 4(c)(ii). USPS policies require the workplace to "be one in which all employees are treated with dignity and respect by supervisors, subordinates, and coworkers." *Id.* ¶ 4(c)(ii); ECF 27, at 11–12. Between October and December 2016, Guluma worked at the Capital Beltway Facility under supervisor Tamara Johnson. ECF 30, ¶¶ 4(b)–(c). During this period, Johnson harassed Guluma, humiliating him in a manner that affected him psychologically and physically. *Id.* ¶ 4(b).

Guluma describes three specific incidents of harassment. On October 14, Johnson accused Guluma of touching her, resulting in his placement on off-duty status. *Id.* ¶ 4(c)(i). Several other employees refuted Johnson's accusation. *Id.* Guluma's union filed a grievance regarding the incident, and management ordered Johnson to recall Guluma back to work. *Id.* ¶ 4(c)(iii). Guluma attaches statements from two witnesses to the October 14 incident. In the first, dated October 15, the witness states he or she saw Guluma approach Johnson to say something when Johnson "got loud" and said "don't push me, don't push me." ECF 27, at 9. The witness did not see Guluma push Johnson. *Id.* Approximately three minutes later, after another supervisor walked over to the racks, Johnson approached Guluma to hand him a paper. *Id.* She said "don't push me, Fredrick" in front of the other supervisor, who told Guluma to go to the supervisor's office. *Id.* The second witness statement, dated October 18, states that the witness saw Guluma and Johnson "having a verbal conversation, going back and forth." *Id.* at 10. Guluma approached Johnson and "leaned in" while she was on her phone. *Id.* She yelled out "Fredrick, don't touch me!" *Id.* Afterwards, Guluma was told to get off the floor and go to the supervisor's office. *Id.*

Next, on December 25, Johnson singled Guluma out among a group of employees who were relaxing after work. *Id.* ¶ 4(c)(iv). Guluma was relaxing his foot, which was in pain, when Johnson ignored the other employees and told him "to go clock out for the day before his normal 8 hours of work." *Id.* Finally, on December 30, Johnson again yelled at Guluma. *Id.* ¶ 4(c)(iii). When Guluma reported to work that day, the "Manager Distribution Operation" or MDO of the facility allowed him to relieve another employee at the keying station, "as was normal practice when employees of an incoming tour arrive[.]" *Id.* However, Johnson later "came yelling" at Guluma and asking him who told him to relieve the other employee. *Id.* The MDO witnessed Johnson's behavior, but rather than reprimand her, he "just looked on and beckoned [Guluma] to go relieve another employee." *Id.*

Beyond these specific incidents, Guluma alleges in general terms that Johnson's harassment was continuous and pervasive. Before October 14, Johnson singled Guluma out "as an easy target for discrimination by constantly yelling out his names [sic] on the work floor[.]" *Id.* ¶ 4(c)(ii). The October 14 incident was "a culmination of [Johnson's] continuous harassment" of him. *Id.* ¶ 4(c)(i). After management ordered Guluma reinstated following the October 14 incident, Johnson became critical of Guluma's work, "continued to be spiteful and yell at him[,] and always looked for a fault to cause him to retaliate in order to cause trouble for him." *Id.* ¶ 4(c)(iii). Guluma would visit the training room "after the psychological torture at the work place," presumably to escape Johnson's harassment, but Johnson began calling the training room to ask if Guluma was really there. *Id.* ¶ 4(c)(v).

Johnson's harassment of Guluma continued after he informed her "that he is above 40 years [old] and needed to be treated with respect[.]" *Id.* ¶ 4(c)(ii). Johnson did not treat other employees in Guluma's age range the same way, and he was the only African immigrant "working that tour[.]"

3

*Id.* As a result of Johnson's harassment, Guluma "was psychologically tortured, humiliated and severely tormented[.]" *Id.* ¶ 5. He "sustained stress, emotional pain, mental anguish, inconvenience, [and] interference of work performance[.]" *Id.* ¶ 6. He regularly experienced "anxiety, humiliation, frustration or other negative emotions (like hating his existence at work)." *Id.* The emotional stress caused Guluma to require "several attempts to pass the 5-digit parcel post keying exam" that was a precondition for a position he wanted at another facility. *Id.* ¶ 4(c)(v).

Sometime in 2018, Guluma left the Capital Beltway Facility. USPS did not address Johnson's conduct before Guluma departed. *Id.* ¶ 4(c)(ii). As a result, while Guluma was "the first victim" of Johnson's harassment, "the hostile work environment spread to other employees" shortly after he departed. *Id.* After "several employees were subjected to such humiliating conduct[,]" management agreed to transfer Johnson to another facility. *Id.* ¶ 4(c)(vi). Guluma does not explicitly state the impetus for Johnson's transfer, but he provides an August 2017 petition signed by more than two dozen employees that demanded her removal. ECF 27, at 13–14. The petition states that "Johnson is not fit to be a supervisor at the [Capital Beltway Facility] location or anywhere else in the postal system" because she "is constantly having confrontations with numerous employees," talks to employees "as though she were out on the street," "does now know the processes" of the facility, "dresses inappropriately everyday[,]" and "threatens and lies to employees instead of coaching or instructing them." *Id.* It concludes that her behavior "causes chaos and stress every day." *Id.*

After contacting an Equal Employment Opportunity Commission ("EEOC") Counselor, Guluma filed a Formal Complaint of Discrimination with USPS on February 8, 2017. *See* ECF 1, at 28–29. Guluma initiated this lawsuit on December 10, 2020. ECF 1. The defendant moved to dismiss the complaint on September 24, 2021. ECF 19. On May 24, 2022, the Court granted the

motion to dismiss but granted Guluma leave to amend his hostile work environment claims. ECF 26. Guluma filed an amended complaint on June 14. ECF 27. The defendant filed the pending motion to dismiss on August 8. ECF 33. That same day, the Court received a letter from Guluma requesting a swift resolution of his claims, no additional extensions of time for the defendant, and sanctions for the defendant's prior requests for extensions of time. ECF 34. On August 9, the Court mailed notice to Guluma that the defendant had filed a dispositive motion, that he had 28 days to respond, and that the failure to file a timely written response may result in dismissal of his claims without further opportunity for written argument. ECF 35. Guluma has not responded to the motion to dismiss.

**II.     Standard of Review**

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe *pro se* pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a *pro se* complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

**III.     Motion to Dismiss**

The defendant argues Guluma's hostile work environment claims fail because he does not allege that Johnson's conduct was sufficiently severe or pervasive or that it was based on his age or national origin.  The Court agrees on both points.

A hostile work environment exists when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment[.]'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).  To state a hostile work environment claim, a plaintiff must allege "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected trait]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive environment; and (4) which is imputable to the employer."  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)) (internal quotation marks omitted); *see also Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006) (considering hostile work environment claim under the ADEA) (citing *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003)).  A plaintiff must also allege that his protected characteristic was the "but for" cause of the harassment.  *Laurent-Workman v. Wormuth*, --- F.4th ----, 2022 WL 17256701, at *4 (4th Cir. Nov. 29, 2022).

The "severe or pervasive" element "has both a subjective and objective component."  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."  *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 21).  When deciding the objective component of a hostile work environment claim, courts consider "the

7

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor . . . are not actionable[.]" *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (internal quotation marks and citations omitted).

Guluma's allegations in his amended complaint are very similar to his previous allegations, which the Court held were insufficient to state a hostile work environment claim. As an initial matter, the Court again must disregard Guluma's allegations regarding Johnson's behavior before October 14 because, as the Court previously explained, Guluma has not exhausted such claims. ECF 25, at 9. Guluma next realleges his interactions with Johnson on October 14, December 25, and December 30 of 2016. He also realleges, in general terms, that Johnson's yelling and criticism of him were continuous. The Court previously concluded these allegations "do not describe behavior severe or pervasive enough to amount to a change in the terms and conditions of Guluma's employment." *Id.* at 16–17. "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Sunbelt Rentals, Inc.*, 521 F.3d at 315.

Guluma's new allegations include Johnson's calls to the training room to check on his whereabouts and his need to retake the 5-digit parcel post keying exam several times as a result of stress caused by Johnson's harassment. These additions do not change the Court's conclusion.

8

The specific events described by Guluma remain few in number. A supervisor checking the whereabouts of an employee she supervises is not physically threatening or humiliating, nor even offensive. Rather, it seems reasonable for a supervisor to want to know where an employee is. While Johnson's conduct might have been unpleasant, interfered with Guluma's concentration, and caused him stress, the specific incidents he describes are the type of "personality conflict" with one's supervisor that is not actionable as employment discrimination. *Id.* at 316.

This case is similar to *Noveras v. Bon Secours Hospital*, No. HAR-94-3319, 1995 WL 656900 (D. Md. Oct. 27, 1995), *aff'd*, 81 F.3d 150 (4th Cir. 1996) (unpublished table decision). The plaintiff in that case claimed that she was subjected to a hostile work environment based on her national origin. *Id.* at *5. She alleged, in general terms, "that the harassment was continuous," but she described "very few specific instances of harassment." *Id.* For example, she alleged that "people screamed loudly and intimidatingly at her and that her schedule was manipulated so that she would always wind up with the busiest patients[,]" but she did "not support these allegations with any specific dates, times, or descriptions of the circumstances." *Id.* Her only specific allegations included three incidents over two months where coworkers attempted to distract her while she was working and made comments suggesting she was an Asian who was "taking [their] jobs" and she should "go home" because she was no good. *Id.* at *1. She also alleged that she was framed for a mistake and that everyone began blaming her for other mistakes. *Id.* at *5. The Court held that the plaintiff's "unpleasant experience" was "not enough to establish a hostile work environment." *Id.* It reasoned that the alleged conduct was "more likely one where [the plaintiff] was disliked by a specific group of her co-workers who behaved in an immature and unprofessional manner to her." *Id.* Like the plaintiff in *Noveras*, Guluma describes unpleasant working

conditions. But he does not describe severe or pervasive conduct that created an objectively hostile or abusive work environment.

Even if Johnson's alleged conduct was sufficiently severe or pervasive, Guluma's claims fail for the additional reason that he does not plausibly allege that her conduct was based on his age or national origin. Regarding age, Guluma alleges that Johnson yelled at him but did not yell at "his contemporaries of the same age bracket above 40 years of age." ECF 30, ¶ 4(c)(ii). Johnson's behavior continued after Guluma informed her "that he is above 40 years and needed to be treated with respect like his contemporar[ies][.]" *Id.* Regarding national origin, Guluma alleges only that he "was the only African immigrant working on" his tour. *Id.* Missing are any allegations linking Johnson's behavior to Guluma's age or national origin. Indeed, the fact that Johnson apparently treated other unidentified employees in Guluma's age range with respect makes it less likely that his age motivated her conduct towards him.[2]

Any potential causal connection between Guluma's protected traits and Johnson's conduct is undermined further by his allegations that Johnson behaved similarly towards many of the employees she supervised. Guluma alleges throughout the complaint that, while Johnson's harassment initially was limited to him, it soon spread to other employees. According to Guluma, twenty-eight other employees of the Capital Beltway facility signed a petition for Johnson's removal because Johnson was "constantly having confrontations with numerous employees" and caused chaos and stress "every day." ECF 27, at 13–14. The petition does not mention that

---

[2] The fact that other workers over the age of 40 were treated appropriately when Guluma was not suggests some other factor motivated Johnson's conduct. Certainly, it is possible that Guluma's national origin was an impetus. But to survive a motion to dismiss, a claim must be more than possible—it must be plausible. Guluma does not allege any basis from which the Court can infer plausibly that Johnson's conduct towards him was motivated by his national origin as opposed to any other conceivable reason.

Johnson's conduct was limited to employees of a certain age or national origin. It is not reasonable to infer that all twenty-eight employees who signed the petition shared Guluma's protected traits—after all, he states he was the only person of African origin on his tour. In effect, Guluma alleges that Johnson abused her subordinates regardless of their age or origin. Rather than plausibly allege the second element of a hostile work environment, Guluma negates it.

The motion to dismiss is granted.

## IV. Request for Sanctions

Guluma submitted a letter to the Court in which he criticizes the defendant for delays and efforts to extend briefing deadlines and asks the Court to sanction the defendant for wasting the Court's time. The defendant sought and received two extensions of time to file a response to Guluma's complaint, which was filed on June 14, 2022, and moved to dismiss the complaint on August 8. Such relatively modest delays caused by brief, Court-approved extensions in time to respond to a complaint are common, not prejudicial, and not sanctionable. Guluma's request is denied.

## V. Conclusion

Guluma does not plausibly allege a hostile work environment. Johnson's alleged conduct was not severe or pervasive, and the Court cannot reasonably infer that it was based on Guluma's age or national origin. The motion to dismiss is granted, and Guluma's amended complaint is dismissed. Guluma's request for sanctions is denied.

Date: December 13, 2022

_____
Deborah L. Boardman
United States District Judge